IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 6, 2021

**DONALD JONES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 09-01473      Lee V. Coffee, Judge

_____

**No. W2020-00421-CCA-R3-PC**

_____

The Petitioner, Donald Jones, was found guilty by a jury of first degree felony murder and especially aggravated burglary, and he received an effective sentence of life imprisonment plus thirty years. After this court affirmed the Petitioner's convictions on direct appeal, he filed a petition for post-conviction relief contending that he received ineffective assistance of counsel when his counsel failed to locate and interview an alibi witness and failed to request an instruction on accomplice testimony. Following a hearing, the post-conviction court denied the petition. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Donald Jones.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Trial**

The Petitioner was convicted at trial of first degree felony murder and especially aggravated burglary for killing the victim, Mr. Tony Wood, during a burglary at the

victim's home. *State v. Donald Jones*, No. W2011-00973-CCA-R3-CD, 2012 WL 3590363, at *1 (Tenn. Crim. App. Aug. 21, 2012). The victim received multiple gunshot wounds to his chest and died as a result of his injuries. *Id.* at *4.

As related to the issues raised on appeal, the evidence presented at trial showed that on October 23, 2008, Mr. Cortez Jones, the Petitioner's cousin, stole a truck in Mississippi with Mr. William Mathis and then called the Petitioner, who had previously told Mr. Cortez Jones that he needed a stolen vehicle. *Id.* at *1. Mr. Cortez Jones testified that he took the stolen truck to his mother's home in Memphis, Tennessee, and the Petitioner, Mr. Alvin Walker, and Mr. Derrick Anderson arrived at the home in the Petitioner's Dodge Intrepid. The Petitioner offered drugs to Mr. Cortez Jones and Mr. Mathis in exchange for the stolen truck. *Id.* Mr. Cortez Jones then called the victim and told the victim that he had money he owed the victim. *Id.* After their conversation, the Petitioner asked Mr. Cortez Jones what the victim was doing, and Mr. Cortez Jones told him that the victim was at work. *Id.* Mr. Cortez Jones stated that he knew the Petitioner and Mr. Walker had wanted to steal from the victim for a long time because the victim had drugs and money in his home and that he had tried to warn the victim about the Petitioner on prior occasions. *Id.* The Petitioner, Mr. Walker, and Mr. Anderson decided to burglarize the victim's home once they heard that the victim was at work. *Id.* Mr. Cortez Jones testified that he did not help with the burglary, but he did not warn the victim about the burglary. *Id.* He knew the Petitioner usually carried a Tech Nine, an automatic weapon, and he observed Mr. Walker carrying a .38 caliber revolver on the day of the offenses. *Id.*

Mr. Walker and Mr. Anderson drove to the victim's home in the stolen truck, and the Petitioner followed them in his Dodge Intrepid. *Id.* Shortly after 3:00 p.m., the Petitioner called Mr. Cortez Jones from an unfamiliar telephone number, and the Petitioner informed him that he had been shot and needed help. *Id.* The Petitioner told him, "'Man, that n[****] was home—he was at home, Cuz. He shot Walker, and I had to reach around Walker and shoot on him.'" *Id.* Mr. Cortez Jones was unable to help the Petitioner and learned that night that the victim died as a result of the shooting. *Id.* Mr. Cortez Jones later identified the Petitioner, Mr. Walker, and Mr. Mathis in photographic lineups. *Id.* Mr. Cortez Jones confessed to stealing the truck at the time that he told the police about the Petitioner's involvement in the victim's death. *Id.* He testified that the State had not given him an agreement in exchange for his testimony. *Id.*

On cross-examination, Mr. Cortez Jones conceded that he knew the Petitioner would want to know whether the victim was home the day of the offenses. *Id.* at *2. He testified that he was originally investigated for the charge of first degree felony murder, but the charges were dropped after he gave a statement to law enforcement. *Id.* He admitted that he owed the victim money at the time of the victim's death, but he denied

that he was going to share in the proceeds of the burglary. *Id.* Mr. Cortez Jones pleaded guilty to theft of property regarding the truck he stole and conceded at trial that he could have received a more severe punishment than he did for the theft. *Id.*

Mr. Anderson, a co-defendant also charged with first degree felony murder and especially aggravated burglary in the case, testified that on October 23, 2008, the Petitioner offered him fifty or sixty dollars to drive a truck for him. *Id.* at *4. The Petitioner, Mr. Walker, and Mr. Anderson then drove in the Petitioner's Dodge Intrepid to a house in South Memphis where two men he did not know were trying to get a white truck out of the mud in the backyard. *Id.* Once they freed the truck, Mr. Anderson heard Mr. Walker ask one of the men if he had a crowbar, and the man retrieved one from the trunk of his car and gave it to Mr. Walker. *Id.* The Petitioner then told Mr. Anderson, "'You just drive that truck over here, man; we're fixin' to run in the victim's house and get whatever in there out of it and come on back.'" *Id.*

Mr. Anderson testified that he and Mr. Walker entered the truck and followed the Petitioner, who was driving his Dodge Intrepid, to an area near the victim's home. *Id.* at *5. The Petitioner parked his car and entered the truck with Mr. Anderson and Mr. Walker. *Id.* They parked the truck in front of the victim's home and walked to the front door. *Id.* Mr. Anderson recalled that the Petitioner had his umbrella and cell phone in his hands as they approached the victim's home. *Id.* Mr. Walker pried open the front door with the crowbar, and as they were about to enter the residence, the victim walked out with a gun raised. *Id.* Mr. Anderson immediately turned and ran in the opposite direction. *Id.* Just before Mr. Anderson was shot, he looked behind him and saw the Petitioner and Mr. Walker "'tussling'" with the victim over the gun. *Id.* He tried to call the Petitioner after fleeing the scene but was not able to reach him. *Id.* He testified that he never saw the Petitioner with a gun on the day of the killing, but he saw Mr. Walker with an automatic pistol that day. *Id.*

Ms. Erika Jones, Mr. Cortez Jones's sister and the Petitioner's cousin, testified that she saw Mr. Cortez Jones, Mr. Mathis, the Petitioner, Mr. Walker, and Mr. Anderson at her mother's home on the day of the shooting. *Id.* at *2. She also observed the Petitioner's burgundy Dodge Intrepid and a truck with identifying letters on the back parked at her mother's home that day. *Id.* She saw Mr. Mathis give a crowbar to the Petitioner, who handled it with the sleeve of his coat so that he would not touch it with his hand. *Id.* The Petitioner then gave the crowbar to Mr. Walker, who placed it behind the passenger seat of the truck. *Id.* Sometime after 3:00 p.m., she saw the Petitioner leave in his car and then saw Mr. Walker and Mr. Anderson follow him in the truck. *Id.* Later that day, she saw a photograph of the truck on the 5:00 p.m. news during a story about the victim's murder. *Id.*

Ms. Starkesha Craft, the victim's niece, testified that she dropped the victim off at his home at approximately 3:00 p.m. that day, and she later learned he died that afternoon. *Id.* Ms. Celia Ruiz, the victim's next-door neighbor, testified that she heard several gunshots from the direction of the victim's home while she was doing laundry. *Id.* She walked outside and observed an African-American man with dark skin shooting a revolver at the victim. *Id.* The man entered the passenger side of a truck before it drove away. *Id.* She was unable to see the individual driving the truck. *Id.* She testified that she never saw the victim fire a gun and that the victim did not have a weapon in his hand at the time of the shooting. *Id.*

Ms. Malinda Jordan, who lived a short distance away from the victim's home, testified that between 3:15 p.m. and 3:30 p.m., she observed a truck with a bullet hole park in front of her house. *Id.* at *3. She saw an African-American man fall out of the truck and drag himself across the street to the driver's side of a burgundy Dodge Intrepid that was parked across the street. *Id.* She observed the driver of the truck exit the truck, walk over to the Dodge Intrepid, change clothes, and get into the passenger side of the car before it drove away. *Id.* Law enforcement officers located the truck near the victim's home and discovered that it had been left running and had a bullet hole on the right side. *Id.* at *2.

Officers located the Petitioner's cell phone on the ground near the victim's front door. *Id.* at *4. The records from the cell phone used by the Petitioner showed that he and Mr. Anderson made several telephone calls to one another on the day of the victim's murder. *Id.* A crowbar and spent .40 caliber shell casings were found inside the victim's home, and what appeared to be pry marks were found on the victim's door. *Id.* at *3.

Officer Desmond Gibbs of the Memphis Police Department ("MPD") responded to a "man down" call at a fast-food restaurant between 3:00 p.m. and 4:00 p.m. following the shooting. *Id.* at *3. Officer Gibbs discovered Mr. Walker, who had been shot. *Id.* Officer Gibbs testified that Mr. Walker matched the description of one of the suspects involved in the victim's death. *Id.* Mr. Walker later died as a result of a gunshot wound to his torso. *Id.* at *4.

Special Agent Cervinia Braswell of the Tennessee Bureau of Investigation ("TBI") testified that all of the shell casings recovered from the crime scene had been fired from the .40 caliber semi-automatic pistol, which had also been found at the scene. *Id.* Although she could not conclusively state that the bullet recovered from Mr. Walker's body was fired from the .40 caliber pistol recovered from the scene, she determined that the bullet bore the same class characteristics. *Id.* The bullets recovered from the victim's body had different class characteristics than the bullets fired from the .40 caliber bullets

- 4 -

recovered from the scene and were .38/.357 caliber-class bullets. *Id.* She stated that all the bullets recovered from the victim were fired from the same unknown revolver. *Id.*

MPD Sergeant David Parks testified that his investigation revealed that the victim believed the Petitioner and Mr. Cortez Jones "'were trying to set him up.'" *Id.* at *3. He stated that law enforcement suspected that the Petitioner sustained an injury to one of his legs based on information they received that a witness observed the Petitioner crawling from a gray truck to a burgundy Dodge Intrepid. *Id.* As a result, Sergeant Parks instructed his officers to check with local hospitals for individuals with leg injuries or gunshot wounds. *Id.* He expanded the search to hospitals outside of Tennessee, and the Petitioner was found at a hospital in Grenada, Mississippi. *Id.* The Petitioner's burgundy Dodge Intrepid was located at a Memphis apartment complex and blood recovered from the car matched the Petitioner's DNA. *Id.* at *4.

Mississippi Bureau of Investigation Special Agent Peter Clinton testified that on October 23, 2008, he was called to a hospital in Grenada, Mississippi, to investigate a case involving the Petitioner, who had reported being shot during a robbery on the interstate after he had car trouble. *Id.* Special Agent Clinton interviewed the Petitioner, who was unable to describe the two men who shot and robbed him or the suspects' car and was unable to identify the person who drove him to the hospital. *Id.* Special Agent Clinton later discovered that the authorities in Southaven, Mississippi, were looking for an African-American male who might be seeking medical treatment in Mississippi. *Id.* He contacted the authorities in Southaven, Mississippi, who contacted the Memphis Police Department about the Petitioner. *Id.*

The jury convicted the Petitioner of first degree felony murder and especially aggravated burglary, and he received an effective sentence of life imprisonment plus thirty years. *Id.* at *5. On direct appeal, this court affirmed the Petitioner's convictions. *Id.* at *10.

## Post-Conviction Proceedings

The Petitioner filed a pro se petition for post-conviction relief and amended petitions, contending that he received ineffective assistance of counsel. As related to the issues on appeal, the Petitioner claimed that his counsel were ineffective by failing to locate and interview a potential alibi witness and by failing to request an instruction on accomplice testimony at trial. The post-conviction court held a hearing during which trial counsel and the Petitioner testified.

Trial counsel, an assistant district public defender, testified that the Petitioner's case went to trial in 2010 and that he represented the Petitioner on the case over the

course of a couple years. He obtained discovery, provided it to the Petitioner, and then met with the Petitioner to discuss it. Trial counsel met with the Petitioner often in court and visited him in jail, but he did not recall how many times they met. He and co-counsel, another assistant district public defender, met with Petitioner together on a few occasions. Trial counsel testified that the Petitioner informed him that there was an alibi witness who could verify his presence in Mississippi at the time the offenses occurred, but the defense was never able to substantiate the alibi. According to trial counsel, the Petitioner's information about the alibi was consistent with his statement given to Mississippi authorities that he broke down on the side of the interstate, was robbed of his car, and ended up at a Mississippi hospital. He recalled that the Petitioner could not provide details of the incident to a detective who interviewed him. Trial counsel instructed an investigator with the public defender's office to interview witnesses for the defense, but the investigator was not able to locate the alibi witness. He was not sure at the time of the hearing if the investigator ever met with the Petitioner. Trial counsel noted that the investigator prepared written reports pertaining to the investigation, and trial counsel made copies of the reports available to the Petitioner. Trial counsel could not recall if the Petitioner asked him to investigate one or more than one witness, but he testified that he would have attempted to investigate them. Trial counsel stated that he would have asked the Petitioner for contact information, and if the Petitioner did not have the contact information, trial counsel would have asked the investigator to try to locate the witnesses.

Trial counsel did not initially recall what involvement Mr. Anderson or Mr. Cortez Jones had in the Petitioner's case. When asked why the defense did not argue that Mr. Cortez Jones was actually an accomplice so that his testimony would have required corroboration, trial counsel replied, "I simply erred." He did not recall if anyone was charged with the offenses prior to the Petitioner being charged and did not recall investigating if another perpetrator was involved. On cross-examination, trial counsel testified that he vaguely recalled that the State charged Mr. Cortez Jones in the case and that the charges were dropped before trial. He testified that he was confident that the defense either obtained a statement from Mr. Cortez Jones or tried to do so. He agreed that he would have used the statement to cross-examine Mr. Cortez Jones and in closing argument.

The Petitioner testified that trial counsel provided him "partial discovery," which he explained meant that he did not receive parts of discovery from the full discovery file the State possessed and that he was provided additional discovery on two or three occasions after the trial was concluded. The Petitioner recalled that the additional discovery contained arrest reports showing that people were charged in his case before he was charged. According to the Petitioner, he first met trial counsel when he was indicted, and trial counsel provided the Petitioner with discovery. He testified that he saw trial

counsel during court dates and that trial counsel visited him once at jail during the week of trial. The Petitioner stated that he wrote letters to trial counsel while incarcerated, but he only received one response that read, "'I will come see you, I'm sorry I didn't come see you." When trial counsel visited the Petitioner, he introduced the Petitioner to co-counsel. The Petitioner stated that his discussions with trial counsel about his case involved people who implicated him in the burglary and shooting. He testified that he asked trial counsel if he could speak to the investigator, but trial counsel told him that he could not do so. He stated that he wanted an investigator to investigate his alibi, but he never met an investigator while his case was pending. He explained that his alibi witness was Ms. Juanita Croff, who was from Mississippi. He informed trial counsel that Ms. Croff was from Clarksdale, Mississippi, and that they connected with each other in Grenada and Clarksdale. On cross-examination, he stated that he also informed trial counsel that Ms. Croff worked at the Gold Strike Hotel. He informed trial counsel he wanted to pursue at trial the alibi defense that he was dealing drugs in Mississippi at the time of the offenses and was shot in a drug-related robbery.

The Petitioner testified that he never received a report from an investigator and that trial counsel led him to believe that the defense was not using an investigator. According to the Petitioner, trial counsel never discussed the alibi witness with him or told him that the witness was not found. He asked trial counsel about the alibi witness close to the time of trial, but trial counsel "had nothing for [him]." The Petitioner testified that six years after his trial, Ms. Croff met with his prior post-conviction attorney, who recorded a conversation with Ms. Croff. The attorney no longer practiced law.

On cross-examination, the Petitioner acknowledged that Ms. Croff was not with him at the time he was shot on the side of an interstate in Mississippi. The Petitioner explained that he was with her until between noon and 2:00 p.m. on that day and that they "split up" before going to make the drug deal because she did not accompany him to make drug deals. He testified that he and Ms. Croff used to call each other and meet up, but he did not know what her number was at the time he was arrested for the offenses and was unable to provide it to counsel. He did not give trial counsel the number he had used to call her previously. He testified that he had been to her house before, but he did not know her address and did not provide it to counsel. When asked whether he provided the information to co-counsel when trial counsel included co-counsel on a meeting, the Petitioner stated that he did not know who co-counsel was and that it was a week before trial at that time.

In response to the post-conviction court's questioning, the Petitioner testified that he knew Ms. Croff for a couple of years before he was charged with the offenses, that he did not know where she was at the time of the hearing, and that he last communicated

with her before he was arrested. He clarified that he last saw Ms. Croff at approximately 1:30 p.m. on the afternoon he was shot, that she was on her way to work at that time, and that he was shot about thirty minutes after last seeing her. The Petitioner testified that, although she was not with him when he was shot, she could have testified that he was in Mississippi rather than Memphis at that time. He denied that the cell phone found at the victim's home belonged to him, and he stated that he told trial counsel the phone was not his.

The Petitioner testified that he did not give counsel the names of the men who robbed him or their cell phone numbers. He stated that he told the Mississippi Bureau of Investigation agent who interviewed him about him being robbed. He recalled that one of the robbers' names was Jimmy, but he did not know the other man who helped Jimmy rob him. The Petitioner testified that he and Jimmy would call each other to arrange drug deals and would meet in different places, including the laundromat, the interstate, and a house. He stated that he and Jimmy arranged to meet on I-55 Memphis-bound on the day he was robbed and that he waited for Jimmy to arrive on the side of the interstate with his hood up and headlights activated. Jimmy and the other man robbed the Petitioner once they arrived between 1:30 p.m. and 2:00 p.m., and Jimmy shot the Petitioner with a handgun in the foot and the leg during the robbery. A stranger picked the Petitioner up on the side of the interstate and dropped him off at a Grenada hospital. The Petitioner stated that the robbers drove a white Lumina and that he provided this information to the agent who interviewed him.

The post-conviction court made a general credibility finding in favor of trial counsel and against the Petitioner. The post-conviction court found that counsel were not deficient in investigating the Petitioner's alibi defense, finding that trial counsel met with the Petitioner and discussed the discovery with him, that he requested information about the Petitioner's alibi witness, that he provided the limited information offered by the Petitioner to an investigator, and that trial counsel was unable to locate the witness with the investigator's assistance. The court found that trial counsel, having been unable to locate the alibi witness, "made a well-founded strategic choice to challenge the . . . evidence and the credibility of the witnesses in this case." The court additionally found that the Petitioner failed to establish prejudice in counsel's investigation into the alibi because he did not call the alibi witness to testify at the hearing and because he failed to show a reasonable probability that any further investigation would have resulted in a different result at trial.

The post-conviction court found that the issue regarding counsel's failure to request an accomplice instruction was waived. The post-conviction court also found that counsel were not deficient and that the Petitioner failed to show prejudice because there was no basis for the trial court to charge the jury on such an instruction. Referring to its

notes from trial, the post-conviction court found that Mr. Cortez Jones testified he did not know about the burglary until the Petitioner called him after having been shot. The court found that "[t]he facts at trial clearly indicated that [Mr.] Cortez Jones was not involved in the planning, perpetration, or execution of the home invasion and killing." The post-conviction court, which was also the trial court, stated that if there were any basis to charge Mr. Cortez Jones as an accomplice in fact or in law, the court would have done so regardless of whether trial counsel requested the instruction. The court denied the Petitioner post-conviction relief, and the Petitioner appeals.

## ANALYSIS

The Petitioner claims on appeal that he received ineffective assistance of counsel because counsel failed to locate and interview a potential alibi witness and failed to request an accomplice instruction during trial. In support of his claim that counsel failed to locate and interview an alibi witness, the Petitioner argues that counsel's failure to timely meet with him prior to trial and the inadequate use of investigative services contributed to the defense's inability to locate the alibi witness. The State responds that the post-conviction court properly denied the Petitioner relief. We agree with the State.

A petitioner may request post-conviction relief by asserting grounds alleging that his conviction or sentence is void or voidable because it abridged his constitutional rights provided by the Tennessee or the United States Constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citations omitted).

A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94

(Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Measuring counsel's performance requires giving deference to counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689).

"[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Adequate preparation includes counsel's "duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). Counsel's decision to not investigate must be assessed by courts "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

To demonstrate that a counsel's deficient performance prejudiced the defense, a petitioner must prove "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dellinger*, 279 S.W.3d at 294 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The Petitioner claims that counsel were ineffective by failing to locate and interview a potential alibi witness. The trial court credited trial counsel's testimony that he met with the Petitioner, discussed discovery with him, requested information from the Petitioner about the Petitioner's alibi, provided the information about the alibi witness to an investigator, and could not locate the witness with the investigator's assistance. *See Fields*, 40 S.W.3d at 456. Although the Petitioner asserts that he wanted to speak with an investigator personally, he conceded at the hearing that he provided trial counsel with all of the available information he had about the alibi witness. The Petitioner has failed to show that counsel's representation was deficient. He has also failed to show prejudice because he did not call the alibi witness to testify at the hearing. *Black v. State*, 794 S.W.2d 752, 758 (Tenn. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Therefore, the Petitioner is not entitled to relief on this claim.

The Petitioner next claims that his counsel failed to request an accomplice instruction at trial and that the instruction would have required the State to corroborate Mr. Cortez Jones's testimony. The State responds that there was no evidence to support the accomplice instruction and that the Petitioner did not suffer prejudice. We conclude that, in light of the evidence presented at trial, the Petitioner cannot establish prejudice.

The post-conviction court noted that a panel of this court on direct appeal determined that this issue was waived, and the post-conviction court found this issue was waived. However, this court did not consider on direct appeal whether the Petitioner's constitutional right to effective assistance of counsel was violated by the failure to request the accomplice instruction at trial; instead, we determined that a challenge to the trial court's failure to issue the instruction was waived. *See Donald Jones*, 2012 WL 3590363, at *8-9. Accordingly, the issue of whether the Petitioner received ineffective assistance of counsel on this ground has not been waived.

A criminal defendant in Tennessee cannot be convicted "solely upon the uncorroborated testimony of an accomplice." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citing *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994), *superseded by statute as stated in State v. Odom*, 137 S.W.3d 572, 583 (Tenn. 2004); *Monts v. State*, 379 S.W.34, 43 (Tenn. 1964), *overruled on other grounds by State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013)). "An accomplice is defined as a person who knowingly, voluntarily[,] and with common intent unites with the principal offender in the commission of the crime." *State v. Anderson*, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997) (citing *State v. Perkinson*, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992)). Generally, a witness qualifies as an accomplice if "the alleged accomplice could be indicted for the same offense charged against the defendant." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn.

Crim. App. 1997). The Tennessee Supreme Court has stated that in order to properly corroborate accomplice testimony,

> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Shaw*, 37 S.W.3d at 903 (quoting *Bigbee*, 885 S.W.2d at 803). The corroborating evidence need only be "slight." *State v. Griffs*, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997).

Because there was overwhelming corroborating evidence, the Petitioner cannot show that a failure to request the instruction was prejudicial. To demonstrate prejudice, the Petitioner must have shown that had "the questioned accomplice instruction been given to the jury, there is a 'reasonable probability' that [he] would have been acquitted." *See Chico Lopez Chigano v. State*, No. 03C01-9602-CR-00061, 1997 WL 105002, at *2 (Tenn. Crim. App. Mar. 11, 1997) (citing *Strickland*, 466 U.S. at 693). Ms. Jones, who was not an accomplice, testified that at her mother's home, she observed Mr. Mathis give a crowbar to the Petitioner, who grabbed it with his coat sleeve so as to not touch it with his bare hand. The Petitioner then handed the crowbar to Mr. Walker, who placed it in the stolen truck. Sometime after 3:00 p.m., the Petitioner left the home in his burgundy Dodge Intrepid, while Mr. Walker and Mr. Anderson left in the stolen truck. Ms. Ruiz, the victim's neighbor, observed the shoot-out and saw the perpetrators enter a truck. Between 3:15 p.m. and 3:30 p.m., Ms. Jordan observed a truck with a bullet hole park in front of her house. A man fell out of the truck and dragged himself to a burgundy Dodge Intrepid, and the Petitioner's blood was recovered from the Intrepid. Law enforcement discovered a truck with a bullet hole in it still running near the victim's home, a crowbar inside the victim's home, pry marks on the victim's door, the Petitioner's cell phone outside of the victim's home, and the Petitioner's Dodge Intrepid, with his blood inside, at a Memphis apartment complex. The Petitioner's cell phone records reflected that he and Mr. Anderson made several telephone calls to one another on the day of the victim's murder. Law enforcement suspected the Petitioner of sustaining an injury to his legs, and the Petitioner was discovered in Grenada, Mississippi, seeking medical attention for gunshots wounds. The Petitioner's explanation of the origin of the wounds was

implausible.  We note that this court on direct appeal found the evidence sufficiently corroborated Mr. Anderson's testimony.  *Donald Jones*, 2012 WL 3590363, at *8 (relying on the evidence above and also on Mr. Cortez Jones's testimony that the Petitioner "had wanted to steal from the victim for a long period of time and took the stolen truck on October 23, 2008, for the purpose of burglarizing the victim").  We conclude that the Petitioner has failed to establish prejudice because the evidence corroborated Mr. Cortez Jones's testimony implicating the Petitioner in the victim's murder.  *See Shaw*, 37 S.W.3d at 903 (quoting *Bigbee*, 885 S.W.2d at 803).  Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE